Jimmy D. **MADDOX**, Petitioner,

v.

Maurice H. **SIGLER**, Warden, Nebraska Penal Complex, Respondent.

Civ. No. 1627 L.

United States District Court,
D. Nebraska.

Feb. 19, 1971.

County, Nebraska, in 1964, with assault with intent to commit rape, armed robbery, and kidnapping. C. Morris Gillespie was appointed by the District Court of Buffalo County to represent Maddox. A plea of guilty to the charges of assault with intent to commit rape and armed robbery was made and the kidnapping charge was dropped. Three primary contentions are made on behalf of the petitioner in the brief submitted by counsel. They are stated in that brief as follows:

"(1) Whether it is legally possible to enter a guilty plea to a crime which was never committed by the Petitioner.

"(2) The knowing and voluntary nature of Petitioner's guilty plea and the subsequent deprivation of due process of law as guaranteed by the 14th Amendment.

"(3) Petitioner's right to effective assistance of counsel; by the 6th Amendment as applied to the state's by the 14th Amendment."

As to (1), it appears to be the petitioner's position that there was no robbery committed and that he, therefore, could not properly plead guilty to that charge. The petitioner's brief states:

"The record is entirely devoid of any showing that Petitioner committed a robbery. With no such showing, it is Petitioner's contention that he pleaded guilty to two of the crimes charged * * * in order to effect a bargain with the County Attorney to drop the more serious crime of kidnapping, a capital offense."

Paul E. Watts, Omaha, Neb., for petitioner.

C. C. Sheldon, Asst. Atty. Gen., for respondent.

The declaration that the record is devoid of a showing that the petitioner committed a robbery is not correct. The record shows a plea of guilty to that charge by the petitioner. That plea established both the commission of a crime of robbery and the petitioner's having committed it, unless that plea was not voluntary. Whether the plea was voluntary or not will be discussed in the next section of this memorandum. Testimony

## MEMORANDUM OF DECISION

URBOM, District Judge.

An evidentiary hearing has been had on the petitioner's petition for a writ of habeas corpus, briefs have been submitted, and the matter has been submitted for determination by the court.

James D. Maddox, the petitioner, was charged in the District Court of Buffalo

by the petitioner in this court that no robbery was committed means merely that he believes that he had or in the future would have a defense to the charge of robbery; it certainly does not mean that his plea of guilty to the charge cannot stand.

■■  In the petitioner's brief a verbal attack is made on the prosecuting attorney for having "overcharged" the petitioner with kidnapping when he had no intention of prosecuting it or no hope of winning it and that the prosecuting attorney "accomplished this purpose by frightening the semi-literate Petitioner into a plea of guilty to a crime which had no basis in fact or otherwise." There is not the slightest bit of evidence to support that attack. It should be made clear that the burden of proving a denial of constitutional rights is upon the petitioner in this proceeding for a writ of habeas corpus and he cannot carry that burden of proof by mere assertions or by pointing to a lack of evidence in the record. He, the petitioner, must establish by evidence the charges he makes; otherwise they must be disregarded. Pronouncing James D. Maddox to be a "semi-literate" is wholly unjustifiable. James D. Maddox has been for many months the legal inmate assistant at the Nebraska Penal and Correctional Complex and, as such, has presented to this court numerous legal pleadings drafted by him. They demonstrate considerable mental and verbal acuity, not all of which could have been accumulated since 1964. Counsel for the petitioner in this court speaks of "swift justice" and "legal deceit." The petitioner himself testified in this court that he has no quarrel with the swiftness of the proceedings in the District Court of Buffalo County, Nebraska, and this court can find no support in the record for the charge of "legal deceit." Plea bargaining has been and will continue to be a useful and valuable instrument for both the prosecution and the defense in criminal proceedings. As long as a criminal defendant is given the effective assistance of competent counsel, the procedure of effecting an agreement by the prosecution to dismiss one or more charges in return for a plea of guilty to one or more other charges must be given respect.

■  It is elementary that "a plea of guilty, knowingly and understandingly made, waives all non-jurisdictional defects and defenses and equates with an admission of guilt." Cantrell v. United States, 413 F.2d 629, 632 (C.A. 8th Cir. 1969). Therefore, any attack upon a conviction following a guilty plea, which attack is on a ground other than jurisdictional, must be directed against the voluntariness of that plea. Further, when a guilty plea is entered by an accused who is represented by counsel, that guilty plea is deemed to be valid unless it can be demonstrated that counsel's assistance was incompetent and ineffective. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To determine fully the voluntariness of the petitioner's guilty plea it is necessary to consider all the relevant circumstances and assess the quality of counsel's assistance.

■  Thus, in the case at bar, issue (2), as set out above, must be resolved against the petitioner unless he was denied the effective and competent assistance of counsel.

To determine whether the assistance by counsel was competent and effective I go to the evidence submitted at the evidentiary hearing in this court. From that evidence I find the facts to be as follows: James D. Maddox and Robert G. Nicholson were apprehended in Wisconsin on about October 9, 1964. On October 21, 1964, Nebraska law enforcement authorities took them to Kearney, Nebraska. During the trip to Kearney, Nebraska, Maddox and Nicholson were told by the sheriff of Buffalo County that they were being returned to face a kidnapping charge which carried the death penalty and that the people in the community and the county attorney were mad. The offenses with which Maddox and Nicholson were charged occurred on August 24, 1964, in or near Kearney,

Nebraska. The sheriff also stated that he knew of people who were carrying guns, that he had taken a gun away from one person, and that the people were "up in arms." They were charged on a county court complaint with assault with intent to commit rape, armed robbery, and kidnapping. On October 23, 1964, the district judge in the District Court of Buffalo County, Nebraska, appointed C. Morris Gillespie to represent them. On Saturday, October 24, 1964, an information, charging them with the three offenses, was served at 10:40 a. m. and at 11:55 a. m. on the same day they were arraigned after waiving the requirement of law that 24 hours elapse between service of the information and entry of a plea. Maddox then entered a plea of guilty to the charges of assault with intent to commit rape and armed robbery. The charge of kidnapping was dismissed. Between the time of Gillespie's appointment on October 23 and the arraignment Gillespie talked with the district judge either by telephone or personally and then went immediately to the jail where he talked with Maddox and Nicholson briefly, learning that Maddox and Nicholson were most interested in getting the kidnapping charge dismissed, and then talked with the county attorney, who told him that if Maddox would enter a plea of guilty to the two other charges, the charge of kidnapping would be dropped. Gillespie then conferred again with Maddox and Nicholson. He learned that Maddox had been charged previously in California with a crime and took it that Maddox "knew what (he was) doing" so did not go into all of the minute details of what was necessary to stand trial or what would happen if they entered a plea. He told them of the possible penalties for each of the charges, discussed slightly the facts concerning the crimes, and told them that the people of Kearney were "up in arms." Gillespie talked with the sheriff and perhaps other investigative officials and learned some of the circumstances of the offenses from some source, such as the names of the girls involved, where they had

been picked up, and the taking of money from them. Maddox at no time indicated to Gillespie his innocence on any of the charges. Gillespie's primary interest and effort was to obtain dismissal of the kidnapping charge. He did not discuss with Maddox the possibility of a change of venue for trial, because there was no question in his mind that a fair and impartial trial could be had in Kearney. No physical threats of any kind were made to Maddox or Nicholson at any time until after the sentencing. No indication was given to Gillespie that the pleas of guilty were affected by the fear for the personal safety of Maddox or Nicholson. Gillespie did not seek to persuade Maddox or Nicholson to plead guilty.

The Court of Appeals for the Eighth Circuit has allowed the adequacy of a counsel's representation to be attacked successfully "only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court." Cardarella v. United States, 375 F.2d 222, 230 (C.A. 8th Cir. 1967); Kress v. United States, 411 F.2d 16, 22 (C.A. 8th Cir. 1969).

I am convinced that the representation by Gillespie was not such as to make the proceedings "a farce and mockery of justice, shocking to the conscience of the Court." Maddox understandably was concerned, and probably fearful, about what would happen to him if he stood trial. If his concern was that he might be mobbed, that concern was not communicated to his attorney or to the court to which the plea of guilty was made. Upon stating to the court that his plea was guilty to both the counts, the court said:

"By that you mean that you did commit the acts which are charged. Is that correct?"

Maddox responded, "Yes." Upon a careful examination of the entire proceedings that accompanied the plea of guilty, I cannot conclude that Maddox was so gripped by fear that he was incapable of comprehending what he was saying or

**982**

doing or that Gillespie's representation was incompetent and ineffective.

■ Complaint is made also in the petitioner's brief, although admittedly as a secondary claim, that the sentence was so great as to constitute cruel and unusual punishment. The sentence in each instance was within the maximum permitted by the Nebraska statutes and not so severe as to constitute cruel and unusual punishment.

■ Other complaints raised by the petitioner will be disposed of summarily. With respect to the petitioner's attack on the manner of extradition, the Supreme Court of Nebraska properly found that the claim was of no consequence and could not be made by way of collateral attack. State v. Maddox, 183 Neb. 834, 164 N.W.2d 652 (1969). The contention that the information was faulty because it did not reveal the names of the victims is without merit, because that defect, if such it was, was validated by the guilty plea. Cantrell v. United States, 413 F.2d 629 (C.A. 8th Cir. 1969). Under the totality of the circumstances this court finds that the petitioner was afforded due process of law and that his petition for a writ of habeas corpus must be denied.

An appropriate order will be entered this day.