**Merle BURNSIDE, Petitioner,**

v.

**Maurice H. SIGLER, Warden of the Nebraska Penal and Correctional Complex, Respondent.**

**Civ. No. 1730 L.**

United States District Court,
D. Nebraska.

April 30, 1971.

Kevin Colleran, Lincoln, Neb., for petitioner.

Mel Kammerlohr, Asst. Atty. Gen., for respondent.

MEMORANDUM

URBOM, District Judge.

The petitioner, Merle Burnside, is presently an inmate of the Nebraska Penal and Correctional Complex pursuant to his conviction in the District Court of Hall County, Nebraska, for the crime of burglary. The state conviction rests upon the petitioner's plea of guilty, entered in the state court on June 17, 1969. On July 11, 1969, the court sentenced the petitioner to a term of 3 to

10 years. A timely appeal was effected from the conviction to the Supreme Court of Nebraska, State v. Burnside, 185 Neb. 234, 175 N.W.2d 1 (1970). On October 16, 1970, I concluded in a written memorandum in this case that the petitioner had exhausted his state court remedies.

Initially this court granted the petitioner's motion to proceed in forma pauperis pursuant to 28 U.S.C.A. § 1915 and ordered that the application for writ of habeas corpus be filed without prepayment of costs and that the respondent show cause why the writ should not issue. Counsel was appointed to represent the petitioner. Thereafter an evidentiary hearing was conducted into the matters raised in the amended petition which was filed on September 4, 1970. The case is now ready for decision.

## STATEMENT OF FACTS

The petitioner was arrested on April 1, 1969, for the crime of burglary of Terry's Used Cars, a business located in Grand Island, Nebraska. A preliminary hearing was held in the County Court of Hall County on June 4, 1969. At that hearing Faye Boersen testified that she had been an occupant in an automobile together with the petitioner and Harold Huffman on the night of the burglary, February 24, 1969. She testified that the driver of the automobile, Huffman, stopped a short distance from the location of Terry's Used Cars; that the petitioner left the automobile; and that a short time later he returned to the automobile with two guns in his possession.

The day after the preliminary hearing Gary Thompson, Hall County Deputy County Attorney, filed an information in the district court charging the petitioner with one count of burglary. Apparently later that same day Thompson amended the information to add the count of being a habitual criminal. A second amended information was filed on June 13, 1969, charging the same two counts. Three days later the petitioner entered a plea of not guilty to both counts. However, on June 17, 1969, the petitioner appeared in the state court and requested that he be permitted to enter a plea of guilty to the burglary count. The court accepted the guilty plea. Thompson later dismissed the remaining count under the habitual criminal act.

Presently, the petitioner attacks the legality of the Hall County conviction on the ground that the underlying guilty plea was not voluntary. Four reasons are cited: (1) Thompson used the habitual criminal charge to coerce the petitioner to plead guilty to the burglary charge; (2) Thomas Anderson, the petitioner's court-appointed counsel, was ineffective in representing the petitioner; (3) the petitioner felt that the trial judge was prejudiced against him; and (4) a document used by the state trial court titled "Petition to Enter Plea of Guilty" contained a provision which stated that if the petitioner did not plead guilty and was convicted, the state would not provide court-appointed counsel on appeal.

As to (1) the petitioner states that Anderson informed him that a habitual criminal charge would be filed unless a plea of guilty was entered to the existing burglary count. Purportedly Anderson stressed that, if the petitioner was convicted of being a habitual criminal, a long sentence could be imposed upon a finding of guilt on the burglary count. Shortly after Anderson talked to the petitioner on June 5, 1969, Thompson amended the information to include the habitual criminal count.

As to (2), the petitioner states that Anderson did not provide effective assistance of counsel because of his failure adequately to investigate and interview potential defense witnesses. As a result, the petitioner contends, he pleaded guilty because he felt that his counsel would not be adequately prepared to represent him at a trial. Moreover, Anderson delayed in interviewing Huffman, erroneously told the petitioner that Huffman would testify against him at a trial, and failed to provide an opportunity for Huffman and the petitioner to consult prior to the entry of the plea.

As to (3), the petitioner states that Judge Weaver, the trial judge, was prejudiced against him for these reasons: (a) the judge had prosecuted the petitioner several years earlier when the judge was the Hall County prosecutor; (b) in 1966 dispute erupted over sentencing procedures and the petitioner sued the judge in federal district court; (c) the judge summarily overruled pretrial motions made in connection with the 1969 burglary charge; and (d) the judge prevented the petitioner from talking with Harold Huffman, who was incarcerated in a different part of the Hall County jail during pendency of the 1969 burglary charge.

As to (4), the petitioner states that he was adversely influenced by paragraph 6(e) of a document furnished by the state court titled "Petition to Enter a Guilty Plea." That paragraph provided:

> I understand that I may, if I so choose, plead 'NOT GUILTY' to any offense charged against me, and that if I choose to plead 'NOT GUILTY' the Constitution guarantees me: * * * (e) but that in the event I should, in the future, desire to have these proceedings reviewed by appellate process or otherwise, employment of counsel would be at my own expense as this court is without authority to provide counsel for such purpose."

It is contended that the petitioner pleaded guilty to burglary in an effort to extricate himself from the habitual criminal charge. Apparently the petitioner had planned to request the court to allow the guilty plea to the burglary count to be withdrawn immediately after the habitual criminal charge was dismissed, but, according to the petitioner, paragraph 6(e) frightened him and caused him to stand on his guilty plea.

Recently this court in Maddox v. Sigler, 325 F.Supp. 978 (memorandum D.Neb.1971) enunciated the general rule to be followed where the petitioner, through means of federal habeas corpus, attacks his state conviction by contesting the voluntariness of the underlying guilty plea:

> "It is elementary that 'a plea of guilty, knowingly and understandingly made, waives all non-jurisdictional defects and defenses and equates with an admission of guilt.' Cantrell v. United States, 413 F.2d 629, 632 (C.A. 8th Cir. 1969). Therefore, any attack upon a conviction following a guilty plea, which attack is on a ground other than jurisdictional, must be directed against the voluntariness of that plea. Further, when a guilty plea is entered by an accused who is represented by counsel, that guilty plea is deemed to be valid unless it can be demonstrated that counsel's assistance was incompetent and ineffective. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)."

The validity of the guilty plea, therefore, directly turns upon the issue of whether the defendant was denied effective assistance of counsel during his state criminal proceedings. Consequently, the petitioner's contentions contained in parts (1), (3) and (4) are material only if they bear on this issue.

Moreover, in Maddox v. Sigler, supra, I had occasion to review the standard adopted by the United States Court of Appeals for the Eighth Circuit to determine whether counsel was effective:

> "The Court of Appeals for the Eighth Circuit has allowed the adequacy of a counsel's representation to be attacked successfully 'only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court.' Cardarella v. United States, 375 F.2d 222, 230 (C.A. 8th Cir. 1967); Kress v. United States, 411 F.2d 16, 22 (C.A. 8th Cir. 1969).

I conclude, on the basis of the records and evidence contained in this case, that the petitioner has failed to establish a nexus between the allegations contained in parts (1), (3) and (4) and the allegation that his court-appointed coun-

sel was ineffective, as related in part (2).

First, I find that Thompson did not use the habitual criminal charge to coerce a guilty plea to the burglary charge. On the contrary, the evidence shows he had always planned to charge the petitioner with being a habitual criminal. The fact that the initial information omitted the habitual criminal charge appears to have resulted from inadvertent action rather than a scheme to coerce. The evidence adduced before this court indicates that Thompson planned to obtain convictions on both counts and was reluctant to dismiss the habitual criminal charge. It was only after 15 to 20 conversations on the plea bargain that Anderson finally persuaded Thompson to dismiss the habitual criminal charge in return for the petitioner's plea of guilty to the burglary charge. I find that the petitioner's ultimate decision to plead guilty to the burglary charge was not the product of any collusion between Anderson and Thompson. As in Hulett v. Sigler, 242 F.Supp. 705 (D.Neb.1965) it may be said:

> "* * * (H)ere there were no conversations with petitioner in the absence of his counsel; there was no endeavor to persuade petitioner he should plead guilty and save the prosecutor the trouble of trial; and there was no bargaining in the absence of counsel as to the sentence to be imposed. Shupe v. Sigler, supra, 230 F.Supp. 601 at 605. Contrariwise, we find here a situation where the prosecutor never conversed with petitioner and there was no endeavor to dissuade petitioner from contesting the charges filed against him. As emphasized before, all bartering was by and through Hulett's attorney."

■ Implicit in Judge Van Pelt's decision in Hulett is the idea that a court-appointed counsel may have an affirmative obligation to consider with his client the possibility of a plea bargain and failure to explore this avenue might be considered dereliction of his duty. 242 F.Supp. at 707. It is clear that Anderson did explore and finally decide upon the course of plea bargaining rather than of standing trial, but only after carefully evaluating the case with the petitioner. Two years after the conviction the petitioner regrets his decision to plead guilty and perhaps would today elect to stand trial if afforded the opportunity. However, a plea of guilty voluntarily and intelligently made cannot be changed because of a change in heart at a later date.

■ I conclude that the petitioner's court-appointed attorney was not an agent of prosecutorial threats or coercion and did not permit the petitioner to be intimidated into pleading guilty, and that the decision by the petitioner to accept the bargain was made with the full consent and advice of counsel as to the avenues open. The petitioner's plea appears to have been made after evaluating the fact that the state allegedly had an eye witness to the burglary and Huffman and Boersen were willing to testify for the state against the petitioner. In addition, none of the potential defense witnesses could have substantiated the petitioner's alibi.

The allegations in parts (3) and (4) attempt to set forth an independent constitutional basis for vitiating the petitioner's conviction, aside from these allegations' relation to the claim of ineffectiveness of counsel. Therefore, as to these parts, the court finds that they are insufficient to constitute the issuance of a writ of habeas corpus.

Finally, the petitioner states that Anderson either failed to investigate his case, or if he did investigate it, the results of the investigation were not communicated to the petitioner prior to the entry of the plea. I conclude that this allegation is not supported by the evidence. In fact, Anderson made three or four trips to Lincoln, Nebraska, to interview potential defense witnesses whom the petitioner thought would corroborate his alibi that he was in Lincoln rather than Grand Island at the time of the burglary. However, counsel was able to

locate only one of these two witnesses in Lincoln, and that individual apparently would have testified on behalf of the petitioner only in return for a "fee." As mentioned previously, Anderson also talked with Huffman, but later discovered that Huffman had written a letter to Thompson offering to testify for the state. Also interviewed by Anderson were the petitioner's mother, his sister, and a co-worker, none of whom could place the petitioner in Lincoln on the date of the burglary. The evidence adduced at the evidentiary hearing indicates that the petitioner was made aware of the results of these interviews and investigations *before* entering his plea of guilty.

After full consideration of the petitioner's contention that his guilty plea was defective because his court-appointed counsel was ineffective, I conclude that the representation by counsel was by no means "a farce and mockery of justice, shocking to the conscience of the Court."

An appropriate order dismissing the petition will be entered this day.