**Monroe BROWN, Petitioner,**

v.

**Robert PARRATT, Warden, Nebraska Penal and Correctional Complex, Respondent.**

**Civ. No. 74–L–36.**

United States District Court, D. Nebraska.

August 24, 1976.

Prisoner Legal Services Project, Lincoln, Neb., for petitioner.

C. C. Sheldon, Asst. Atty. Gen., State of Neb., Lincoln, Neb., for respondent.

DENNEY, District Judge.

This matter comes before the Court pursuant to 28 U.S.C. § 2254, after an evidentiary hearing and submission of the state court record. The sole issue in this habeas corpus action is whether an enhanced sentence of ten years by virtue of the Nebraska habitual criminal statute, Neb.Rev.Stat.

§ 29–2221 (Reissue 1975)[1] is cruel and unusual punishment as applied to the petitioner.

The petitioner, Monroe Brown, received a sentence of three years imprisonment in 1964 for burglary in the third degree and a three year term in 1967 for larceny and receiving stolen property. In December, 1972, he was found guilty of robbery after a jury trial and received an enhanced sentence of ten years as an habitual criminal by the District Court of Douglas County, Nebraska.

As petitioner concedes, habitual criminal statutes have consistently withstood challenges for facial unconstitutionality, as bills of attainder, *see Byers v. Crouse,* 339 F.2d 550 (10th Cir. 1964), *cert. denied,* 382 U.S. 860, 86 S.Ct. 120, 15 L.Ed.2d 98 (1965); double jeopardy, *see Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); *Wilson v. Slayton,* 470 F.2d 986 (4th Cir. 1972); cruel and unusual punishment, denial of due process and equal protection, *see Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Wessling v. Bennett,* 410 F.2d 205 (8th Cir. 1969), *cert. denied,* 396 U.S. 945 (1969); compulsion to act a witness against oneself, *see Sanders v. Waters,* 199 F.2d 317 (10th Cir. 1952); and punishment for a status, *see Capuchino v. Estelle,* 506 F.2d 440 (5th Cir. 1975).

■ However, petitioner asserts that the Nebraska habitual offender act, while constitutional on its face, amounts to cruel and unusual punishment as applied to him. The Court accepts the proposition that a law which is facially valid may violate the eighth amendment of the Constitution in its application. *See Furman v. Georgia,* 408 U.S. 238, 242, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Hart v. Coiner,* 483 F.2d 136, 139 (4th Cir. 1973), *cert. denied,* 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974). Nevertheless, for the reasons set forth below, the Court cannot agree with petitioner that his sentence as an habitual offender constitutes cruel and unusual punishment.

Petitioner urges the unconstitutionality of Section 29–2221 as applied to him on two grounds: (I) the severity of the prison term imposed on him by virtue of the Act is grossly disproportionate to the gravity of the offenses for which he was convicted and (II) in Douglas County, Nebraska, the Act has been applied so infrequently and in such a random fashion that its application to him was "freakish," i. e., arbitrary and without rational basis.

### I.

■ In *Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), *cert. denied,* 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974) [*Hart*], cited by petitioner, a life sentence under West Virginia's recidivist statute was set aside as so grossly excessive in light of the underlying convictions for which it had been imposed as to amount to cruel and unusual punishment. While *Hart* indicates that a sentence may be held unconstitutionally disproportionate to the nature of the underlying offenses, this is not to be a subjective determination. Petitioner has not addressed the objective factors identified in *Hart* by which a court is to evaluate disproportionality. *See also Roberts v. Collins,* 404 F.Supp. 119, 122–124 (D.Md.1975).

■ First, a court is to consider the gravity of the offenses. Petitioner's crimes are far more serious than the entirely non-violent offenses in *Hart,* i. e., issuing an insufficient funds check for $50.00, transporting

---

1. Neb.Rev.Stat. § 29–2221(1) (Reissue 1975) defines an habitual criminal as "[w]hoever has been twice convicted of crime, sentenced and committed to prison, in this or any other state, or by the United States, or once in this state and once at least in any other state, or by the United States, for terms of not less than one year each. . . . ."

Such person "shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal, and shall be punished by imprisonment in the Nebraska Penal and Correctional Complex for a term of not less than ten nor more than sixty years; *provided,* that no greater punishment is otherwise provided by statute, in which case the law creating the greater punishment shall govern."

forged checks for $140.00 across state lines, and perjury.

Second, the Court is to determine whether the legislative purposes behind the penalty can be achieved by a significantly less severe punishment. In *Hart,* life imprisonment for passing bad checks was unnecessarily severe to protect society from such crimes. "Nor, except on the theory that more is better, [was] it necessary to deter others." *Hart,* 483 F.2d at 141. On the other hand, this Court cannot say that a sentence of ten years is excessive for the protection of society against repeated thefts or to deter such conduct.

■ The final two factors involve comparing the sentence under review with penalties for the same offenses in other jurisdictions and with those in the same jurisdiction for other crimes. Petitioner has not shown that a ten year enhanced sentence is irrationally disparate treatment in comparison with multiple offender penalties in other states or compared to the sentences for other offenses in Nebraska.

■ The Court may not purport to decide whether petitioner actually deserved such extreme punishment but only whether the punishment he received violates the eighth amendment. *See Griffin v. Warden,* 517 F.2d 756, 757 (4th Cir. 1975).

When, as here, the challenged sentence is within the limits prescribed by state law and the statutory scheme is acknowledged to be valid on its face, the Court is especially aware of its "limited role" in reviewing the sentence. *Gregg v. Georgia,* —— U.S. ——, ——, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976).

[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane

or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people. *Id.*

## II.

■ Petitioner next asserts that even if the habitual criminal act is founded on legitimate penal goals, these purposes are defeated by the manner in which the penalties are imposed. Petitioner bases this assertion on statistics for 1970–1972 in Douglas County, which show that 104 defendants were eligible to be charged as habitual criminals for that county and period, 14 were so charged and 3 were deemed habitual criminals (2.88%).[2] Petitioner concludes that these statistics "speak for themselves" and that "[t]he only conclusion which may be drawn from [them] is that the application of the Habitual Criminal Statute in Douglas County Nebraska, is an extremely infrequent and arbitrary occurrence."

The Court does not agree with petitioner's conclusion of fact that a 2.88% frequency of application is so rare as to be "freakish" within the meaning of *Furman v. Georgia,* 408 U.S. 238, 310, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) [*Furman*]. The question is whether the use of a penalty has become so uncommon that its occasional application approximates the analogy used by Justice Stewart in *Furman, supra,* that "death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual." *Furman,* 408 U.S. at 309, 92 S.Ct. at 2762.

Petitioner would not argue that the imposition of enhanced penalties on 30 of 104 persons would be exceptional or rare, and the Court would not dispute that prosecution of 3 out of 10,400 would be infrequent application of the statute. However, 3 out of 104 persons, or 30 of 1040, lies somewhere between these two extremes, and the rarity of application is not so readily apparent as to indicate arbitrary and irrational

---

2. The sentence of one of the three habitual offenders was subsequently reversed. However, with regard to the frequency of the statute's application, the important figure is the number of persons who were deemed to be habitual offenders, without regard to whether some later prevailed on appeal.

**48**

prosecution of multiple offenders and to justify this Court's intervention in the state penal process.

█ Moreover, the Court cannot accept the implication that the Act must be applied either more frequently or not at all. Other recidivist offenders may have legitimately avoided enhanced penalties by the decision of state authorities to afford mercy[3] or by plea bargaining, both of which are unquestionably constitutional forms of prosecutorial discretion.

Petitioner urges that the state's use of the habitual criminal act does not reach enough recidivists to satisfy society's needs for retribution and protection or to serve as a credible deterrent. Even if such inferences were reasonably to be drawn from petitioner's limited statistical sample, these are matters of judgment for the state legislature. This Court will not substitute its judgment as to how the state should best act to achieve its penal goals, and the Court does not agree with petitioner that state authorities, concededly acting within the range of their discretionary functions, have so infrequently invoked the habitual criminal act that it no longer realistically serves any purpose to invoke it at all.

█ Petitioner has presented expert testimony to support his claim that the threat of an habitual criminal charge is being used in Douglas County, Nebraska, to exact involuntary guilty pleas and to discourage the demand for jury trials. Despite this Court's disapproval of such tactics, the Court cannot reach the issue, as petitioner did not plead guilty and did seek a jury trial. Petitioner may not rely on such potential abuse of the constitutional rights of others. Moreover, even if petitioner had entered a plea of guilty in order to avoid a recidivist charge, he would be required to present evidence of coercion or deception in order to attack the plea. A

willing and intelligent decision to plead guilty, attended by the advice of counsel, pursuant to a plea bargain is not a ground for habeas corpus. *See Hulett v. Sigler*, 242 F.Supp. 705 (D.Neb.1965); *Burnside v. Sigler*, 329 F.Supp. 1257 (D.Neb.1971).

An Order is filed contemporaneously herewith in accordance with this Memorandum Opinion.

---

**3.** "Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution." *Gregg v. Georgia*, —— U.S. ——, ——, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976). Moreover, that the prosecution accepts pleas from and grants immunity to some defendants is not a denial of

due process or equal protection for those not afforded the same treatment. *See United States v. Dalton*, 465 F.2d 32 (5th Cir. 1972), *cert. denied*, 409 U.S. 1062, 93 S.Ct. 570, 34 L.Ed.2d 515 (1972); *Moss v. Hornig*, 314 F.2d 89 (2nd Cir. 1963); *Sanders v. Waters*, 199 F.2d 317 (10th Cir. 1952).