Monroe BROWN, Appellant,

v.

Robert PARRATT, Warden, Nebraska
Penal and Correctional
Complex, Appellee.

No. 76–1861.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1977.

Decided June 13, 1977.

Don Thompson, Prisoner Legal Services
Project, Lincoln, Neb., for appellant; Peter
T. Hoffman, Lincoln, Neb., on the brief.

C. C. Sheldon, Asst. Atty. Gen., Lincoln,
Neb., for appellee; Paul L. Douglas, Atty.
Gen., Lincoln, Neb., on the brief.

Before HEANEY, ROSS and STEPHEN-
SON, Circuit Judges.

STEPHENSON, Circuit Judge.

Monroe Brown, an inmate of the Nebras-
ka Penal and Correctional Complex, appeals
from the district court's [1] denial of his peti-
tion for a writ of habeas corpus filed pursu-
ant to 28 U.S.C. § 2254.

Brown was convicted of robbery after a
jury trial in the district court of Douglas
County, Nebraska. Upon the state's mo-
tion, Brown was found to be an habitual
criminal pursuant to Nebraska's habitual
criminal statute,[2] and received an enhanced
sentence of ten years imprisonment. The
Supreme Court of Nebraska affirmed
Brown's conviction. *State v. Brown,* No.
38942, Supreme Court of Nebraska.

Having exhausted his state remedies,
Brown sought habeas corpus relief in the
United States District Court for the District
of Nebraska. He alleged that the Nebraska
habitual criminal statute under which he
was sentenced was unconstitutional because
it constituted cruel and unusual punish-
ment. After an evidentiary hearing and
the submission of the state court record, the
district court rejected Brown's contentions
and dismissed his petition for a writ of
habeas corpus. *Brown v. Parratt,* 419
F.Supp. 44 (D.Neb.1976). Brown appeals
that decision.

The sole issue on this appeal is
whether the Nebraska habitual criminal
statute constitutes cruel and unusual pun-
ishment in violation of the Eighth Amend-

1. The Honorable Robert V. Denney, United
States District Judge for the District of Nebras-
ka.

2. Neb.Rev.Stat. § 29–2221 (Reissue 1975).

ment to the United States Constitution. First, Brown contends that because the prosecuting attorney has unlimited discretion to prosecute under the habitual criminal statute, the resulting sentence is cruel and unusual punishment. Brown's argument in this regard is identical to the argument raised in *Martin v. Parratt,* 549 F.2d 50 (8th Cir. 1977).[3] In *Martin,* the petitioner contended that such unfettered discretion amounted to such arbitrariness and capriciousness as to constitute cruel and unusual punishment. This court rejected that contention. *Martin v. Parratt, supra,* 549 F.2d at 52. *See also Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976). Opportunities for discretionary action are inherent in the prosecution of criminal cases. The district court noted that "Other recidivist offenders may have legitimately avoided enhanced penalties by the decision of state authorities to afford mercy or by plea bargaining, both of which are unquestionably constitutional forms of prosecutorial discretion." *Brown v. Parratt, supra,* 419 F.Supp. at 48 (footnote omitted). Accordingly, we find Brown's first argument unpersuasive. Second, Brown contends that the application of the Nebraska habitual criminal statute during the relevant time period was so infrequent and arbitrary as to be "freakish" within the meaning of *Gregg v. Georgia, supra,* and *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). According to Brown, the statute is unconstitutional as applied to him because such "freakish" application of the statute constitutes cruel and unusual punishment. He bases this argument on statistics for 1970–72 in Douglas County, which show that 104 defendants were eligible to be charged as habitual criminals, 14 were actually charged, and 3 were deemed habitual criminals.

■ The Eighth Amendment's proscription of cruel and unusual punishment is not limited to the death penalty. However, the freakishness rationale which implicates the Eighth Amendment has been discussed only in the context of the death penalty. *See Gregg v. Georgia, supra,* and *Furman v. Georgia, supra.* The question then becomes whether the standard of freakishness should be applied in non-death penalty cases, such as the instant case.

We conclude that the *Furman* rationale of freakishness is limited primarily to cases involving the death penalty. The following language indicates that *Furman* was based, at least in part, on the uniquely grave nature of the death penalty:

> The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity.

> \* \* \* \* \* \*

> These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual. \* \* \* [T]he petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed. \* \* \* I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed.

*Furman v. Georgia, supra,* 408 U.S. at 306, 309–10, 92 S.Ct. at 2760, 2762–2763 (footnote omitted) (Stewart, J., concurring). Our conclusion is further supported by *Gregg*:

> While *Furman* did not hold that the infliction of the death penalty *per se* violates the Constitution's ban on cruel and unusual punishments, it did recognize that the penalty of death is different in kind from any other punishment imposed under our system of criminal justice. *Because of the uniqueness of the death pen-*

---

**3.** It should be noted that, as in *Martin,* appellant does not contend that the selectivity of enforcement was deliberately based upon an unjustifiable standard.

alty, *Furman* held that it could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner. * * *

*Furman* mandates that where discretion is afforded a sentencing body *on a matter so grave as the determination of whether a human life should be taken or spared,* that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.

*Gregg v. Georgia, supra,* 96 S.Ct. at 2932 (emphasis added). Consequently, an infrequent application of the Nebraska habitual criminal statute does not render the statute unconstitutional as cruel and unusual punishment. We therefore need not reach the question of whether it was so infrequently imposed in Douglas County, Nebraska, that it could be deemed "freakish." Accordingly, we find the statute was not violative of the Eighth Amendment as applied to Brown.

Affirmed.

HEANEY, Circuit Judge, concurring:

In *Martin v. Parratt,* 549 F.2d 50 (8th Cir. 1977), this Court held that the Nebraska habitual criminal statute does not "[give] the prosecutor unreviewable discretion to control petitioner's sentencing, thereby denying him [the defendant] due process and equal protection of the laws in violation of the fourteenth amendment." In my judgment, *Martin* was incorrectly decided and should be reversed by this Court. I recognize that this panel must adhere to the decision in *Martin* but the Court en banc should change that result when the opportunity arises.[1]

The Habitual Criminal Statute of Nebraska[2] provides that anyone *charged* and *convicted* as a habitual criminal must be sentenced to a minimum term of ten years. This result obtains even when the trial court feels, as it did here, that the sentence is grossly disproportionate to the seriousness of the triggering offense.[3] The trial court may place the convicted defendant on

---

1. *Martin* also held that application of the habitual criminal statute was not cruel and unusual punishment in violation of the Eighth Amendment. While I am unwilling to accept the majority's conclusion in *Martin* or here on this issue, I am not convinced that the circumstances of this case are serious enough to invoke the protections of the Eighth Amendment under the rationale of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726 (1972). The majority concludes that the *Furman* rationale of freakishness is primarily limited to death penalty cases and that, consequently, the infrequent application of the Nebraska habitual criminal statute does not render the statute unconstitutional. I cannot accept this reasoning. Nevertheless, I would not reverse on this ground because the sample used in the statistical study presented at trial was not sufficiently comprehensive to establish that the statute has been applied in a "freakish" manner.

2. Nebraska Revised Statutes § 29–2221(1) & (2) states in pertinent part:
   (1) Whoever has been twice convicted of crime, * * * for terms of not less than one year each, shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal, and *shall* be punished by imprisonment * * * for a term

of not less than ten nor more than sixty years[.]
   (2) Where punishment of an accused as an habitual criminal is sought, the facts with reference thereto must be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted * * *. If the accused is convicted of a felony and before sentence is imposed, a hearing shall be had before the court alone as to whether such person has been previously convicted of prior felonies. * * * At the hearing, if the court shall find from the evidence submitted that the accused has been convicted two or more times of felonies and sentences imposed therefor by the courts of this or any other state, or by the United States, the court *shall* sentence such person so convicted as an habitual criminal. [Emphasis added.]

3. Here, the defendant, a black, was convicted of stealing $17.00 and a watch from another man in the mens' room of a bar. No dangerous weapon was used. He had been convicted of third-degree burglary in 1964 and 1967. *Compare Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), *cert. denied,* 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974).

probation but it must impose the minimum required by the statute.

Nebraska is the only state in the Eighth Circuit which vests such broad sentencing discretion in its prosecuting attorneys.[4] Arkansas,[5] South Dakota[6] and Minnesota[7] authorize, but do not require, the trial court to impose additional penalties for habitual felony violators. Iowa mandates an additional sentence for habitual criminals but permits the Court to determine the length of the sentence.[8] Missouri leaves the trial courts with considerable discretion.[9] While the

---

**4.** A strong argument can be made that the Nebraska statute violates the separation of powers doctrine of the United States and Nebraska Constitutions. In effect, this statute delegates to the prosecuting attorney an essential element of the judiciary's sentencing function because the court is relieved of all discretion in sentencing those charged as habitual criminals. If a conviction is obtained, the decision to charge a defendant as a habitual criminal is tantamount to imposition of the required minimum sentence. I believe this delegation is improper. The sentencing function is a judicial one to be exercised in accordance with policy directives of the legislative branch. ABA Standards Relating to Administration of Criminal Justice, *Sentencing Alternatives and Procedures* 1.1 & 2.1 (1974). The prosecutor, of course, is responsible for the enforcement of our criminal statutes and must be given discretion to prosecute or to refrain from prosecuting; but in my judgment, it is improper to couple that function with the sentencing one in such a way as to take from the judiciary its constitutional sentencing function.

**5.** Section 41–1001, Arkansas Statutes Annotated, states in part:
*Sentence to imprisonment for felony—Extended term for habitual offender.*—(1) A defendant who is convicted of a felony and who has previously been convicted of two or more felonies *may be sentenced* to an extended term of imprisonment * * * [Emphasis added.]

**6.** *22–7–6. Increased felony sentence upon finding of prior felony convictions.*—When a convicted defendant's principal offense is a felony the sentencing judge *may increase* the sentence upon a finding, made part of the record, that the defendant has been convicted of prior felonies. The determination of whether a prior offense is a felony will be determined by whether it is a felony under the laws of this state.
*22–7–7. Two or more prior felony convictions—Sentence increased.*—When a defendant has been convicted of at least two prior felonies, in addition to the principal felony, the sentence for the principal felony *may be enhanced* by changing the class of the principal felony to the next class which is more severe.
*22–7–8. Three or more prior felony convictions—Sentencing as for Class 1 felony.*—When a defendant has been convicted of at least three prior convictions, in addition to the principal felony, he *may be sentenced* as if the principal felony were a Class 1 felony.

South Dakota Codified Laws Ann. §§ 22–7–6, 22–7–7 & 22–7–8 (emphasis added).

**7.** Section 609.155, Minnesota Statutes Annotated, states in pertinent part:
*Extended term for dangerous offenders*
Subd. 2. When applicable. Whoever, having previously been convicted of one or more felonies, commits another felony other than murder in the first degree *may* upon conviction thereof *be sentenced* to an extended term of imprisonment if:
(1) A presentence investigation and report has been made pursuant to section 609.115; and
(2) Findings are made by the court as required by section 609.16. [Emphasis added.]

**8.** *"Habitual criminal" defined*
Whoever has been twice convicted of crime, sentenced, and committed to prison * * * for terms of not less than three years each shall, upon conviction of a felony committed in this state after the taking effect of this section, be deemed to be an habitual criminal, and shall be punished by imprisonment in the penitentiary *for a term of not more than twenty-five years*, provided that no greater punishment is otherwise provided by statute, in which case the law creating the greater punishment shall govern.
Iowa Code Ann. § 747.5 (emphasis added).

**9.** Section 556.280, Missouri Annotated Statutes, provides in pertinent part:
*Second offense, how punished*
If any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, shall be sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor, and is charged with having thereafter committed a felony, he shall be tried and if convicted punished as follows:
(1) If the subsequent offense be such that, upon a first conviction, the offender could be punished by imprisonment in the penitentiary, then the person shall receive such punishment provided by law for the subsequent offense *as the trial judge determines* after the person has been convicted. [Emphasis added.]
and Section 560.161, Missouri Annotated Statutes, in part provides:
*Penalties for stealing—fourth offense*
1. Any person convicted of stealing as provided in subsection 2 of section 560.156 shall be punished as follows:

Supreme Court has considered a number of cases involving the constitutionality of recidivist statutes, it has not decided the question of whether such statutes are unlawful because they give virtually unreviewable sentencing discretion to prosecuting attorneys.

Professor Kenneth Culp Davis has noted in his commentary *Discretionary Justice: A Preliminary Inquiry* (1969):

> [J]udicial intrusion into the prosecuting function is contrary to the settled judicial tradition. But why is it? Is it because the tradition became settled during the nineteenth century when courts were generally assuming that judicial intrusion into any administration would be unfortunate? Is it because the tradition became settled while the Supreme Court was actuated by its 1840 remark that "The interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief"? Is it because the tradition became settled before the courts made the twentieth-century discovery that the courts can interfere with executive action to protect against abuses but at the same time can avoid taking over the executive function? Is it because the tradition became settled before the successes of the modern system of *limited* judicial review became fully recognized?
>
> On the basis of what the courts know today about leaving administration to administrators but at the same time providing an effective check to protect against abuses, should the courts not take a fresh look at the tradition that prevents them from reviewing the prosecuting function? Throughout the governmental system, courts have found that other administrative or executive functions are in need of a judicial check, with a limited scope of review. *The reasons for a judicial check of prosecutors' discretion are stronger than for such a check of other administrative discretion that is now traditionally reviewable.* Important interests are at stake. Abuses are common. The questions involved are appropriate for judicial determination. And much injustice could be corrected.

*Id.* at 211–212 (emphasis included and footnotes omitted).

This commentary is consistent with the dissent in *Berra v. United States,* 351 U.S. 131, 138, 140, 76 S.Ct. 685, 690, 691, 100 L.Ed. 1013 (1956) (Black and Douglas, JJ., dissenting). The dissenters said:

> I think we should construe these sections so as not to place control over the liberty of citizens in the unreviewable discretion of one individual—a result which seems to me wholly incompatible with our system of justice. * * * Of course it is true that under our system Congress may vest the judge and jury with broad power to say how much punishment shall be imposed for a particular offense. But it is quite different to vest such powers in a prosecuting attorney. A judge and jury act under procedural rules carefully prescribed to protect the liberty of the individual. * * * No such protections are thrown around decisions by a prosecuting attorney. Substitution of the prosecutor's caprice for the adjudicatory process is an action I am not willing to attribute to Congress in the absence of clear command.

*Discretionary Justice, supra* at n.38, 214.

Professor Davis's admonition is not inconsistent with the majority's statement in *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962), that "the conscious exercise of *some* selectivity in en-

---

(1) If the value of the property stolen is less than fifty dollars, unless otherwise provided herein, by a fine of *not more than one thousand dollars* or by confinement in the county jail for *not more than one year* or by both such fine and confinement;

(2) If the value of the property stolen is at least fifty dollars, by imprisonment by the division of corrections *for not more than ten years nor less than two years,* or by confinement in the county jail *for not more than one year,* or by a fine of *not more than one thousand dollars,* or by both such fine and confinement. [Emphasis added.]

forcement is not in itself a federal constitutional violation." (Emphasis added.) Here, the selectivity is unrestrained.[10]

Steps to curb prosecutorial discretion in a limited manner would give substance to the American Bar Association's standards relating to the administration of criminal justice,[11] to the recommendations embodied in § 7.03 of the Model Penal Code,[12] and would discourage abuse of prosecutorial discretion.

**10.** For excellent treatments of the problems inherent in habitual criminal legislation, *see* Klein, Habitual Offender Legislation and the Bargaining Process, 15 Crim.L.Q. 417 (1973); Katkin, Habitual Offender Laws: A Reconsideration, 21 Buffalo L.Rev. 99 (1971).

**11.** PART II. STATUTORY STRUCTURE AND JUDICIAL DISCRETION—RANGE OF ALTERNATIVES.

2.1 General principles: statutory structure.

* * * * * *

(b) The sentencing court should be provided in all cases with a wide range of alternatives, with gradations of supervisory, supportive and custodial facilities at its disposal so as to permit a sentence appropriate for each individual case.

(c) The legislature should not specify a mandatory sentence for any sentencing category or for any particular offense.

PART III. STATUTORY STRUCTURE AND JUDICIAL DISCRETION—TOTAL CONFINEMENT

3.3 Habitual offenders.

(a) Sentences authorized under present habitual offender legislation should be revised, where necessary, to conform to the following standards:

(i) Any increased term which can be imposed because of prior criminality should be related in severity to the sentence otherwise provided for the new offense;

(ii) The sentencing court should be authorized to fix a maximum term at any point from the maximum otherwise applicable up to a legislatively prescribed limit. As an outside limit for extreme cases, twenty-five years ought to be the maximum authorized prison term.

* * * * * *

(b) Whether to sentence a particular offender to the normal term or to a special term on grounds of habitual criminality should be a matter for the discretion of the sentencing court, and should be determined at the time of sentencing. An additional term should only be permitted if the court finds that such a term is necessary in order to protect the public from further criminal conduct by the defendant, and in support of this finding also finds that:

(i) The offender has previously been convicted of two felonies committed on different occasions, and the present offense is a third felony committed on an occasion different from the first two. A prior offense committed within another jurisdiction may be counted if it was punishable by confinement in excess of [one year]. A prior offense should not be counted if the offender has been pardoned on the ground of innocence, or if the conviction has been set aside in any post-conviction proceeding; and

(ii) Less than five years have elapsed between the commission of the present offense and either the commission of the last prior felony or the offender's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior felony conviction; and

(iii) The offender was more than [21] years old at the time of the commission of the new offense.

ABA Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968).

**12.** *Criteria for Sentence of Extended Term of Imprisonment; Felonies*

The Court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this Section. The finding of the Court shall be incorporated in the record.

(1) The defendant is a persistent offender whose commitment for an extended term is necessary for protection of the public.

The Court shall not make such a finding unless the defendant is over twenty-one years of age and has previously been convicted of two felonies or of one felony and two misdemeanors, committed at different times when he was over [insert Juvenile Court age] years of age.

(2) The defendant is a professional criminal whose commitment for an extended term is necessary for protection of the public.

The Court shall not make such a finding unless the defendant is over twenty-one years of age and:

(a) the circumstances of the crime show that the defendant has knowingly devoted himself to criminal activity as a major source of livelihood; or

(b) the defendant has substantial income or resources not explained to be derived from a source other than criminal activity.

(3) The defendant is a dangerous, mentally abnormal person whose commitment for an extended term is necessary for protection of the public.

The Court shall not make such a finding unless the defendant has been subjected to a psychiatric examination resulting in the conclusions that his mental condition is gravely abnormal; that his criminal conduct has

In summary, then, I believe the Nebraska Habitual Criminal Statute vests unreviewable sentencing authority in the prosecuting attorney in violation of the due process clause of the Fourteenth Amendment. In my judgment, *Martin* was incorrectly decided and ought to be reversed.

After carefully reviewing the record, I have serious doubts about the constitutionality of the plea bargaining process in this case and the use of the habitual criminal statute as part of that process. In his first amended petition for habeas corpus, Brown argued that the Nebraska Habitual Criminal Statute was unconstitutional as applied because it can be used to chill the exercise of a defendant's right to trial by jury and because it induces involuntary guilty pleas. It does not appear from the record before us that this issue was raised before the Nebraska Supreme Court. For this reason the District Court should not have considered it as part of Brown's habeas motion and, in my view, he remains free to raise the issue in state court. If he is denied relief there, he may raise it again in federal court.

In ruling on this issue, the District Court held that Brown could not raise the claim because he did not plead guilty. In my judgment, the District Court misperceived the issue and the standing considerations involved; and because of this misperception, I feel compelled to express my views.

Brown claims that initially he was charged with robbery and asked to plead guilty to that offense. He refused. Subsequently, the information was amended to include a larceny charge. Brown alleges that he was told the robbery charge would be dismissed if he pled guilty to the larceny charge. Again, he refused the offer. At this point, he claims he was told that unless he pled guilty to the larceny charge, that charge would be withdrawn and he would be charged as a habitual criminal. He refused this offer and was so charged.

The issue, as I view it, is not whether the statute was used to coerce a guilty plea but whether it was employed, and can be employed in similar situations, to chill the defendant's exercise of his right to trial before an impartial fact finder.

Plea bargaining is well established in the administration of criminal justice. Properly conducted and fairly negotiated, plea bargaining serves a useful purpose for society, the prisoner and the quality of justice in those cases which must be tried. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *see also Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). However, the considerations which support the plea bargaining process do not authorize a prosecutor to threaten defendants with additional charges if they insist on rights guaranteed by the Constitution. *United States v. DeMarco,* 401 F.Supp. 505, 511 (D.C.Cal.1975). *See generally Griffith v. Wyrick,* 527 F.2d 109 (8th Cir. 1975); *United States v. Gallington,* 488 F.2d 637 (8th Cir. 1973), *cert. denied,* 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974). Prosecutors may charge a defendant with each and every violation authorized by statute for the offense committed. A defendant so charged is not coerced in con-

been characterized by a pattern of repetitive or compulsive behavior or by persistent aggressive behavior with heedless indifference to consequences; and that such condition makes him a serious danger to others.

(4) The defendant is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted.

The Court shall not make such a finding unless:

(a) the defendant is being sentenced for two or more felonies, or is already under sentence of imprisonment for felony, and the sentences of imprisonment involved will run concurrently under Section 7.06; or

(b) the defendant admits in open court the commission of one or more other felonies and asks that they be taken into account when he is sentenced; and

(c) the longest sentences of imprisonment authorized for each of the defendant's crimes, including admitted crimes taken into account, if made to run consecutively would exceed in length the minimum and maximum of the extended term imposed.

Model Penal Code (U.L.A.) § 7.03 (1962).

stitutional terms to forego his right to trial by an impartial fact finder when he agrees to plead guilty to one of the charges with the understanding that the others will be dropped. This process merely enables the defendant to accept the certainty of a lesser penalty rather than face a wide range of possibilities ranging from acquittal to conviction on each of the several charges. *Brady v. United States, supra.* Because the defendant is charged initially with each of the various offenses, there is no implication that the more severe charges are added for vindictive or threatening purposes. Here, however, it is alleged that the habitual criminal charge was included in response to Brown's refusal to plea to a lesser charge and his persistence in demanding a trial of the issues.

On several occasions, the Supreme Court and various appellate courts have registered their disapproval of practices involving the escalation of sentences or charges filed in response to a defendant's insistence on asserting constitutional rights. In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the defendant's initial conviction was reversed on constitutional grounds. Subsequently, he was retried, convicted and sentenced to a harsher term than first imposed. In affirming the reversal of his second sentence on due process grounds, the Court noted the chilling effect which the threat of an increased sentence on retrial could have on a defendant's willingness to exercise his right of appeal. *North Carolina v. Pearce, supra* at 724–726, 89 S.Ct. 2072. *See also Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

In *United States v. Stockwell,* 472 F.2d 1186 (9th Cir.), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973), the district judge advised the defendant prior to trial that if he pled guilty to one count, he would receive a three-year sentence, but if he chose to stand trial and was convicted, he would receive a five- to seven-year sentence for the same offense. The defendant pled not guilty, was convicted and sentenced to seven years. The Court of Appeals reversed the sentence holding that the

defendant could not be punished with a longer sentence for electing to stand trial. *See also United States v. Gerard,* 491 F.2d 1300 (9th Cir. 1974).

Finally, in *United States v. DeMarco,* 401 F.Supp. 505 (C.D.Cal.1975), an indictment was dismissed when it was learned that the charges contained therein were filed in retaliation for the defendant's insistence on asserting his right to have the venue of the original trial changed. *See also United States v. Anderson,* 468 F.2d 440 (5th Cir. 1972); *Lassiter v. Turner,* 423 F.2d 897 (4th Cir. 1970). *Contra, Peterson v. State of Missouri,* 355 F.Supp. 1371 (W.D.Mo.1973); *Ford v. United States,* 295 F.Supp. 1180 (E.D.Mo.1969). I believe the principles enunciated in these cases control the outcome in ours if Brown can prove the facts he alleges.

Finally, the issue of standing must be addressed. Apparently, the District Court felt that because the alleged inducement was unsuccessful (*i. e.,* Brown refused to plead guilty and proceeded to trial), Brown lacked standing to assert that the statute and the plea bargaining process were unconstitutional as applied to him. I disagree with that holding for two reasons. First, the court in *DeMarco* dismissed the retaliatory indictment even though the defendant successfully asserted his change of venue motion. The fact that the indictment was brought for a retaliatory purpose was sufficient to warrant its dismissal even though its intended purpose, to discourage the venue motion, was not accomplished. Similarly, I think the fact that the habitual criminal charge was brought for an unlawful purpose is sufficient to permit Brown to argue its constitutionality.

Second, I believe that this case presents the type of constitutional question which courts have traditionally heard even though it may be argued that the party raising the claim was not injured thereby. In my opinion, the threat offered in this case is one that may be repeated in the future and oftentimes will not succeed. Thus, it is clearly one that is "capable of repetition,

yet evading review". *Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). In such circumstances, courts have traditionally relaxed barriers to review on the merits. I would do so here.