Charles Wesley WATKINS, Petitioner,

v.

Herman SOLEM, as the duly qualified, and acting Warden of the South Dakota State Penitentiary, or his successor, Respondent.

No. CIV 76–4112.

United States District Court, D. South Dakota, S. D.

Aug. 19, 1977.

James R. Myers, of Simons, Gibbs, Feyder & Myers, Sioux Falls, S. D., for petitioner.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, S. D., for respondent.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Petitioner Charles Wesley Watkins seeks a writ of habeas corpus, based upon his allegation that his plea of guilty to two state charges of third degree burglary was not entered into voluntarily but rather was the product of impermissible coercion by the state. Petitioner asserts a basis for habeas corpus relief on three grounds: that his guilty plea was coerced by police threats of prosecution under the state's habitual criminal statute, S.D.C.L. 22–7–1 (1967); that his guilty plea was coerced by police threats of prosecution of a friend; that his guilty plea was entered into on the basis of a promise, later claimed to be broken by certain police officers that they would speak on petitioner's behalf at sentencing.

On July 11, 1975, petitioner pled guilty in state court to two charges of third degree burglary stemming from incidents at two Sioux Falls bars, Waterhole # 1 and Stockmans. (Arraignment and Sentencing Transcript P. 15). These were not the first felonies on petitioner's record. On three prior occasions, petitioner was sentenced to the state penitentiary as a result of felony convictions.[1] In addition, two other felony

---

1. In 1968, petitioner was sentenced on two counts, robbery in the first degree and assault to commit robbery. In 1970 he was convicted of grand larceny auto theft. In 1972 petitioner was convicted of grand larceny.

matters were pending in the courts at the time of the July 11th sentencing.[2]

On June 29, 1975, petitioner was caught inside the Stockman's bar at 3:45 A.M. He had a tire iron in one hand and about $1,000 in cash in the other. At the time of his arrest, petitioner was out on his own recognizance on the charge involving the burglary of Waterhole # 1. He, along with Orville Flute, had been arrested in Rapid City, South Dakota, on that charge.[3] (Arraignment and Sentencing Transcript P. 34).

Upon being arrested in the Stockman's bar, petitioner was brought to the police station where he first talked with Detective James McKelvy and later with Sergeant Gene Corbett. Prior to any conversations, petitioner was advised as to his constitutional rights. (Hearing Transcript P. 17). All of petitioner's testimony at the evidentiary hearing concerned those conversations. Petitioner was concerned with "doing a lot of time." His previous felony convictions caused consternation over a possible habitual criminal charge. As a result, petitioner was cooperative. He told McKelvy to "pull the pink copies" on numerous unsolved crimes. Petitioner then helped clear up the police books on some thirty-five unsolved crimes. (Hearing Transcript P. 17).

The state court appointed William Kenyon to be counsel for petitioner. With his assistance, a plea bargain was reached with the state. (Arraignment and Sentencing Transcript Pp. 18, 19). The state agreed not to re-file charges on the case that was reversed by the South Dakota Supreme Court. Also, the state agreed not to pursue conviction of the drug charge in the matter that was, at that time, before the state Supreme Court. In return, petitioner agreed to plead guilty to the two burglary charges. This plea bargain arrangement was understood and accepted by the petitioner. (Arraignment and Sentencing Transcript Pp. 21, 22). Petitioner also understood that the court was not bound by such an arrangement. (Arraignment and Sentencing Transcript Pp. 27, 28).

The decision to plead guilty was solely the decision of the petitioner. (Arraignment and Sentencing Transcript P. 28). As a result of the plea bargain, and in recognition of his guilt, petitioner did plead guilty to two counts of burglary on July 11, 1975. (Arraignment and Sentencing Transcript P. 15). On three occasions at that arraignment and sentencing petitioner conceded his guilt. (Arraignment and Sentencing Transcript Pp. 16, 27 and 29). Moreover, he did not deny his guilt at the evidentiary hearing before this court.

At the time of his plea, petitioner was fully informed as to the nature of the charges against him. (Arraignment and Sentencing Transcript P. 7). He was also fully advised of his constitutional rights, (Arraignment and Sentencing Transcript Pp. 8, 13), and the effect of a guilty plea on the exercise of those rights. The only threat or promise that petitioner expressed as being involved in his plea was the concern over a possible habitual criminal charge. (Arraignment and Sentencing Transcript Pp. 23). Such charges had not been filed against the petitioner at that time and were in fact never filed against him. (Arraignment and Sentencing Transcript Pp. 18, 19). There were no other threats or promises. (Arraignment and Sentencing Transcript Pp. 26, 28).

2. In 1973, petitioner was convicted on several counts of burglary in the third degree and grand larceny. That conviction was reversed by the South Dakota Supreme Court. *State v. Watkins*, S.D., 228 N.W.2d 635 (1975). At the time of the July 11th sentencing, a retrial of that matter was scheduled for later in that week. In addition, petitioner had another matter pending at that time before the South Dako-

ta Supreme Court. That case involved a drug charge stemming from the search of petitioner's house. That case was later disposed of in *State v. Watkins*, S.D., 237 N.W.2d 14 (1975).

3. That charge against Orville Flute was subsequently dismissed as it was determined by the state's attorney's office that Mr. Flute was not a principal in that burglary.

The state court, after inquiring into petitioner's self-perceived threat regarding a habitual criminal charge, informed petitioner that such a charge was merely a possibility and should not be considered as a certainty regardless of his plea at that time. (Arraignment and Sentencing Transcript Pp. 24, 25). The court provided petitioner with an opportunity to reconsider his guilty plea. Petitioner, upon being fully informed by the court, chose not to change his guilty plea. (Arraignment and Sentencing Transcript P. 25).

Petitioner sought post-conviction relief in state court. On July 1, 1976, a hearing was held in state court. Relief was denied. In addition, on July 22, 1976, a state court order was signed denying petitioner's motion for a certificate of probable cause for appeal. Thereafter, pursuant to 28 U.S.C. 2254, petitioner filed for a writ of habeas corpus with this court. In consideration of that petition, this court conducted an evidentiary hearing on July 8, 1977. At that hearing, petitioner presented evidence solely consisting of his own testimony. That testimony was basically the same given at the state post-conviction hearing. From this complete record this court finds that petitioner's application for a writ of habeas corpus should be denied.

■ Petitioner first asserts that his guilty plea was coerced by threats of prosecution under S.D.C.L. 22–7–1 (1967), the state's habitual criminal statute. Neither the evidence nor the law supports a grant of petitioner's writ on that basis.

The evidence does not reflect petitioner's claim that he was coercively threatened with a habitual criminal charge. Detective McKelvy testified at the evidentiary hearing that petitioner was the one who first brought up the possibility of such charge. Petitioner was familiar with the habitual criminal statute as he had been charged under it in a prior case. At best this evidence reflects petitioner's concern rather than the prosecution's coercion. Furthermore, the sentencing judge provided petitioner with an opportunity to change his guilty plea if in fact it was made out of fear of a habitual criminal charge. Petitioner, who had admitted his guilt on several occasions during sentencing, chose not to change his plea. This evidence does not support petitioner's claim of an involuntary plea.

■ The record indicates that petitioner's plea was made intelligently and voluntarily and with a full understanding of the effect of that plea on his constitutionally protected rights. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). This conclusion is not altered by petitioner's assertions of coercion. Before a guilty plea may be deemed void because of promises or threats made to the accused it must be shown that such promises or threats rendered the plea involuntary. *Machibroda v. U. S.*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). In this regard, petitioner has failed to present sufficient evidence.

As the court noted in *Lovan v. Wingo*, D.C., 315 F.Supp. 656, 659 (W.D.Ky.1970): "Merely stating that the plea was coerced is not enough, rather such a statement must be supported by facts." There the court denied petitioner's writ for habeas corpus holding that his guilty plea could not be considered involuntary where petitioner, who was facing a life sentence if he went to trial under a habitual criminal charge, was sentenced to fifteen years as a result of that plea. A similar result was reached in *Hulett v. Sigler*, D.C., 242 F.Supp. 705 (D.Neb.1965). There the court held that petitioner was not entitled to habeas corpus relief as a result of a willing and intelligent guilty plea allegedly entered into as a condition for the prosecution's dropping of recidivist charges. The court noted that the proper inquiry in such a matter "is whether the inducement for the guilty plea was one which necessarily overcame the defendant's ability to make a voluntary decision." *Hulett v. Sigler, supra*, at 707.[4]

---

4. See also *Larson v. Coiner*, D.C., 351 F.Supp. 129 (N.D.W.Va.1972). There the petitioner in pleading guilty to a state charge avoided trial under a habitual criminal statute. The court

Petitioner's allegation that his guilty plea was involuntary because it was entered into out of fear of a habitual criminal charge is insufficient for a grant of the relief sought. This is not a case where the prosecution did not deliver on plea bargain agreement. In addition, the claim that the state coerced the plea through threats of a habitual criminal charge lacks support in the evidence. The evidence, therefore, mandates a conclusion similar to that reached in *Perez v. Craven*, D.C., 314 F.Supp. 867, 869 (C.D.Cal. 1970):

> Petitioner next contends that his 1962 plea of guilty was a result of fear that the Prosecutor would invoke the California Habitual Criminal Act. Fear that the State will attempt to impose a legal sanction undoubtedly confronted Petitioner with a difficult choice, but that did not render his guilty plea involuntary. "We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty . . . authorized by law for the crime charged." *Brady v. U. S.*, 397 U.S. 742, [90 S.Ct. 1463, 25 L.Ed.2d 747] (1970); and *Smith v. Wilson*, 373 F.2d 504 (9th Cir. 1967).

This conclusion is supported by language in the decisions of the Eighth Circuit Court of Appeals. In the most recent case involving a petition for habeas corpus in which relief was sought on the basis of impermissible prosecutorial discretion in the use of a state habitual criminal statute, the Eighth Circuit denied the writ. *Brown v. Parratt*, 560 F.2d 303 (8th Cir. 1977). Although the case concerned a claim that the use of the habitual criminal statute by the prosecution constituted cruel and unusual punishment, the court nevertheless addressed generally the use of potential habitual criminal charges by the prosecution. The court noted: "Opportunities for discretionary action are inherent in the prosecution of criminal cases. . . . 'Other recidivist offenders

may have legitimately avoided enhanced penalties by the decision of state authorities to afford mercy or by plea bargaining, both of which are unquestionably constitutional forms of prosecutorial discretion.' " *Brown v. Parratt, supra*, at 304 citing the decision of the district court, *Brown v. Parratt*, D.C., 419 F.Supp. 44, 48 (D.Neb.1976). *See also Miles v. Parratt*, 543 F.2d 638 (8th Cir. 1976), and *Martin v. Parratt*, 549 F.2d 50 (8th Cir. 1977).

Petitioner contends, however, that:

> The case of *Black v. Erickson*, 86 S.D. 86, 191 N.W.2d 174 (1971), negates any argument that might be asserted by the state that its refraining from charging the petitioner under the Habitual Criminal Act merely constituted part of a valid plea bargain. As a result of the *Black* decision, it is clear that the State would have been unable to charge the Petitioner under the Habitual Criminal Act because it had failed to charge the Petitioner with being a habitual criminal on the original information as required by S.D.C.L. 23–32–9 (1967). Petitioner's Memorandum of Law, P. 3.

This court does not read *Black v. Erickson, supra*, so restrictively. It would be unrealistic to construe *Black* to require that the information contain the habitual criminal charge at the moment it is originally filed or forever surrender prosecution under that statute. The *Black* decision itself recognizes the permissibility of filing a supplemental information. Even without such authority, the state could dismiss the information and refile with an additional habitual criminal charge. *Black* does not preclude the state from adding a habitual criminal charge through a supplemental information if it is filed before the petitioner enters his plea to the main offense. The *Black* decision merely requires that such an attempt comport with procedural due process and give the defendant adequate notice. *Black v. Erickson, supra*, therefore does not ren-

held that the claim did not merit habeas corpus relief as the state court record indicated that petitioner's plea was voluntary and the product

of a reasoned decision based on knowledge of the available alternatives.

828

der the previously cited authority inapposite.

█ Petitioner's other grounds for relief, threats of prosecution of a friend and certain police officers' failure to testify in his behalf at sentencing, are equally unsupported by the evidence. The decision of the state court in denying petitioner post-conviction relief correctly determined that petitioner's allegations were insufficient to invalidate the plea. Regarding petitioner's claim that he was coerced into protecting a friend, there is no evidence in this record to support the allegation. Moreover, even if there existed evidence to support petitioner's claim of a "sacrificial plea" that would not invalidate his guilty plea. *United States ex rel. Cunningham v. Follette*, 397 F.2d 143 (2nd Cir. 1968); *United States ex rel. Robinson v. Fay*, 348 F.2d 705 (2nd Cir. 1965); Federal Habeas Corpus In State Guilty Pleas, 71 F.R.D. 235, 278 (1976).

## CONCLUSION

█ It is the opinion of this court that petitioner's guilty plea was knowingly, voluntarily, and intelligently made. Petitioner's allegations of coercion in an attempt to invalidate his plea are not supported in the record. This is not a case of unkept promises, coercive threats, or other impermissible activities by the prosecution, and petitioner's claims to the contrary are conclusory and insufficient for the relief sought.

The above shall constitute the court's findings of fact and conclusions of law. The petition for a writ of habeas corpus is denied, and counsel for the respondent is directed to prepare an appropriate order.