No. 87–5449. ANDREWS *v.* SHULSEN, WARDEN, ET AL. C. A. 10th Cir. Certiorari denied. 

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, see *Gregg* v. *Georgia*, 428 U. S. 153, 231–241 (1976) (MARSHALL, J., dissenting), I would grant the petition for certiorari and vacate petitioner's death sentence. Even if I did not hold this view, I would grant the petition because petitioner William Andrews was convicted of murder and sentenced to death under circumstances raising grave concerns

of impermissible racial bias. These circumstances include a mid-trial incident in which a juror handed the bailiff a napkin with a drawing of a man on a gallows above the inscription, "Hang the Niggers." The District Court in this case refused even to undertake an evidentiary hearing to investigate petitioner's substantial allegations of racial prejudice. The Constitution cannot countenance such indifference and summary treatment when a person's life is at stake.

I

Petitioner was convicted for his role in a multiple murder during the robbery of a hi-fi shop in Ogden, Utah. The ringleader of the crimes, Dale Pierre, was executed last year. Evidence at trial indicated that petitioner had a substantially less active role in the murders than Pierre. The two men entered the shop together and forced five people into the store's basement. There the victims were forced to drink liquid drain cleaner, which induced violent vomiting. One of the two victims who survived the robbery testified that petitioner said, "I can't do it, I'm scared," and that petitioner left the scene shortly thereafter. Only after petitioner left did Pierre carry out, in particularly gruesome fashion, the multiple murders for which petitioner has been sentenced to die. Pet. for Cert. 3.

The murders understandably attracted substantial attention in the local press and the community from which the jury venire was drawn. The incident also may have generated racist sentiments, inasmuch as the defendants were black people and the victims were white members of the local community. The single black member of the venire was excluded, and an all-white jury was empaneled.

An ugly racial incident involving the jury occurred during the trial. The jury was eating lunch in a separate dining room when a juror presented the bailiff with a drawing that had been made on a napkin. The drawing represented a stick figure hanging on a gallows. Underneath the figure were the words, "Hang the Niggers." The bailiff was unable to say who had made the drawing or how many other jurors had seen it, although he did inform the court that "some of the jurors" had asked him "what the court may do about this." The only action the trial court took in response was to issue a general instruction to the jury to "ignore communications from foolish people." *Id.*, at 9–10, and n. 4.

After petitioner and Pierre were convicted, the court ordered a 5-day recess. The jury was not sequestered. During this time, media coverage of the conviction was widespread and, petitioner alleges, racially inflammatory. Petitioner alleges, for example, that one newspaper ran a false report that petitioner had directed a "Black Power" closed-fist gesture at one of the surviving victims after the verdict was read. *Id.*, at 10. The jury returned for the separate sentencing hearing and voted unanimously to sentence petitioner to death.

In his petition for a writ of habeas corpus, petitioner alleged that adverse publicity and hostile community sentiment had injected racial animus into his trial and undermined his right to a fair trial. The District Court refused to convene an evidentiary hearing to consider this claim. 600 F. Supp. 408, 415–416 (Utah 1984). The Court of Appeals for the Tenth Circuit upheld this refusal with little discussion, stating: "Having reviewed the briefs and the appellate record, we conclude that no hearing is required under the principles of *Townsend* v. *Sain*, 372 U. S. 293 (1963), and that the constitutional standard for a fair trial has been met." 802 F. 2d 1256, 1260 (1986) (citations omitted).

## II

"This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith* v. *Phillips*, 455 U. S. 209, 215 (1982). Such a hearing is, of course, especially vital when the defendant has been condemned to die. In *Turner* v. *Murray*, 476 U. S. 28 (1986), the Court vacated a death sentence entered in a case in which the trial court had refused the defendant's request to question the prospective jurors on racial prejudice. The plurality recognized that "in light of the complete finality of the death sentence," the Constitution requires district courts to be especially solicitous of allegations of racial prejudice in capital cases. *Id.*, at 35. The Court therefore vacated the sentence, even though no specific allegations of racial prejudice had been made other than the fact that the case involved a black defendant and a white victim. The plurality concluded that "the risk that racial prejudice may have infected petitioner's capital sentencing [was] unacceptable in light of the ease with which that risk could have been minimized." *Id.*, at 36.

This case involves far more serious and specific allegations of racial animus than did *Turner*, including a vulgar incident of lynch-mob racism reminiscent of Reconstruction days. Moreover, petitioner is not asking this Court to decide whether there is sufficient evidence of racial prejudice to impeach the conviction and sentence. He seeks only to have the District Court undertake an evidentiary hearing to consider his charges. I would think it clear that the Constitution, not to mention common decency, requires no less than this modest procedure. See *Tanner* v. *United States*, 483 U. S. 107, 142 (1987) (MARSHALL, J., concurring in part and dissenting in part).

### III

Was it one (or more) of petitioner's jurors who drew a black man hanging on a gallows and attached the inscription, "Hang the Niggers"? How many other jurors saw the incendiary drawing before it was turned over to the bailiff? Might it have had any effect on the deliberations? Was the jury's decision to sentence petitioner to die influenced by racially charged media coverage of the trial between the guilt and penalty phases? These are among the questions that petitioner deserves to have at least considered before he is put to death for a series of murders in which he played only a secondary role. It is conscience shocking that all three levels of the federal judiciary are willing to send petitioner to his death without so much as investigating these serious allegations at an evidentiary hearing. Not only is this less process than due; it is no process at all. I dissent.