Sandra FRANK, Appellant,

v.

Duane BROOKHART, Appellee.

No. 88–1599.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 18, 1988.
Decided June 9, 1989.
Rehearing Denied July 19, 1989.

Richard H. Zimmermann, Iowa City, Iowa, for appellant.

Thomas D. McGrane, Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and NICHOL,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Sandra Frank, convicted of murder in an Iowa state court, appeals from the denial of her petition for writ of habeas corpus brought under 28 U.S.C. § 2254. She argues that: (1) the prosecutor failed to disclose communication from a juror concerning a threatening phone call made during trial; (2) her attorney rendered ineffective assistance of counsel as he failed to give notice of an alibi defense and failed to voir dire jurors concerning their exposure to mid-trial news accounts; (3) this prejudicial mid-trial publicity deprived her of a fair trial; and (4) a new trial is warranted by newly discovered evidence from a psychiatrist that prosecution witness Penny Frank had been suffering from delusional paranoid schizophrenia. We affirm the judgment of the district court.[1]

Sandra Frank was convicted of the murder of George O'Harrow in an Iowa state court, and sentenced to life in prison. During Frank's trial, a recess was called because two key state witnesses, Penny Frank and Andrew Rupar, had disappeared. When these witnesses were found twenty days later, the trial resumed. Although Frank's attorney moved for a mistrial on the basis of juror exposure to prejudicial news accounts concerning the missing witnesses during the recess, he did not conduct voir dire examination of the jurors as to their knowledge of these news accounts.

After the recess, Penny Frank, Sandra's sister, testified that she and Sandra gained entry to O'Harrow's house a month before he was murdered in order "to see what was inside." Penny indicated that at that time Sandra expressed the desire to return and kill O'Harrow. Penny further testified that on the evening of August 30, 1978, Sandra revealed that she killed O'Harrow and that she was going to return to his house and set it on fire. On the next day of trial, Penny again took the stand and recanted her testimony, claiming she had lied because she was mad at Sandra for telling a social worker that Penny had neglected her daughter.

Evidence concerning an old clock which hung on the wall in O'Harrow's garage was offered at trial, as it was the prosecutor's theory that Frank had stolen the clock the night she killed O'Harrow. Rupar, the other witness who had disappeared, told the police before the trial that he heard Sandra Frank admit to killing O'Harrow and to taking the clock from his house. At the trial, however, Rupar admitted that this earlier statement to the police was a lie, and declared that he had seen the clock in Sandra Frank's house four to five months before the killing. Several witnesses similarly testified that they saw the clock in Frank's house before the killing, and stated that Frank offered to sell the clock some time before the crime. Another witness, however, testified that the same clock had hung in O'Harrow's garage.

A palm print matching that of Sandra Frank was lifted from the refrigerator in O'Harrow's kitchen. Frank testified at trial that she did not kill O'Harrow, and that she was at home with her husband on the night of the crime. While she admitted that she had met with O'Harrow at his home concerning renting the house next

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

door, she denied entering O'Harrow's home a month before the crime.

The jury found Sandra Frank guilty of first degree murder, and her conviction was affirmed by the Supreme Court of Iowa. *State v. Frank*, 298 N.W.2d 324 (Iowa 1980). Five years later, Frank filed an application for postconviction relief, raising essentially the same issues that she now alleges in her habeas corpus petition.

At the postconviction hearing a psychiatrist, Ron Larson, testified that Penny Frank began receiving psychiatric treatment one week after Frank's trial and stated his opinion that she was suffering from schizophrenia some months prior to the murder trial. A juror at the trial, Kenneth Riekena, also testified that he had reported to the prosecutor that he received two threatening phone calls, but that he was uncertain when he received the calls. The prosecutor made a note regarding this conversation and placed it in his file, but failed to disclose the communication to either trial counsel or to the court. Sandra Frank's ex-husband, Jerry Smith, testified that Sandra was at home with him on the night of the crime and that he reported this fact to defense counsel. At trial, however, he was prohibited from testifying to this because of counsel's failure to give prior notice to the court that Frank would present an alibi witness. The state court denied Frank's application for postconviction relief and the Iowa Court of Appeals affirmed. *Frank v. State*, 376 N.W.2d 637 (Iowa App.1985).

In considering Frank's petition for writ of habeas corpus, the district court determined that an evidentiary hearing was not necessary, and that all of Frank's state remedies had been exhausted. Turning to the merits, the district court noted that either the Iowa Supreme Court or Court of Appeals had addressed each issue and denied Frank's claims. The court recognized that the factual findings of the state court are entitled to a presumption of correctness, and must be accepted unless Frank establishes by convincing evidence that the factual determinations were erroneous. *See Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 456–57, 78 L.Ed.2d 267

(1983). The court concluded that the results reached by the Iowa courts were fairly supported by the record, and found no basis for granting habeas corpus relief.

## I.

Frank first argues that she is entitled to a new trial because juror Riekena received a threatening phone call and because the prosecutor failed to disclose a communication between himself and the juror regarding the phone call. Frank contends that this threat affected the impartiality of the juror and that the communication to the prosecutor should be presumed to be prejudicial. The Iowa Court of Appeals addressed this issue and held that Frank had not shown by a preponderance of the evidence that the phone call and subsequent communication with the prosecutor had occurred during trial, and that Frank had not shown actual prejudice. *Frank*, 376 N.W. 2d at 640. The district court, in determining whether to grant Frank's petition for habeas corpus, concluded that the substance of the ex parte communications and its effect on the impartiality of the juror were factual findings entitled to a presumption of correctness, *see Rushen*, 464 U.S. at 120, 104 S.Ct. at 456–57, and that Frank had not satisfied her burden of proving that the Iowa court's factual findings were erroneous.

The record shows that Frank introduced into evidence at her postconviction hearing an undated note prepared by the prosecutor which stated that a juror had received a phone call from "some kids" who told him that he "better watch out," but that the caller made no reference to Frank or her trial. The prosecutor testified that he had no independent recollection of the communication with the juror, but that he believed the call may have been made during the twenty-day recess. The juror testified that he could not recall when the phone call was made, but that he believed he never returned to court after receiving the call, implying that the call occurred after the trial. From this evidence, the Iowa court could reasonably conclude that the juror believed the phone call

was from prankish youngsters and that he received it after the trial. The Iowa court's factual findings are supported by the record, and we are satisfied that Frank has not established that she was prejudiced by the threatening call or the prosecutor-juror communication.

## II.

Frank also claims that the assistance of her trial attorney, William Pappas, was ineffective because Pappas failed to file a notice of alibi, precluding the alibi testimony of her ex-husband, Jerry Smith. In order to obtain habeas corpus relief on the grounds of ineffective assistance of counsel, Frank must show: (1) that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed by the sixth amendment, and (2) that the deficient performance so prejudiced the defense as to deprive Frank of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). Both the Iowa Court of Appeals and the district court applied this standard and found the decision to refrain from using an alibi defense to be one of reasonable trial strategy decision.

Pappas testified at the postconviction hearing that he believed Smith's testimony concerning Frank's alibi to be weak and "extremely vague." Pappas stated that he thought Smith's alibi testimony would hurt Frank in front of the jury and serve only to destroy her credibility. Pappas also believed that if he gave a notice of alibi testimony by Smith, the prosecution would dig deeper for evidence to refute it, which he felt should be avoided. Although Pappas later attempted to have Smith testify at trial, we believe Pappas' testimony sufficiently supports the findings of the Iowa Court of Appeals and the district court that his acts were reasonable. Furthermore, the "calling or not calling of witnesses is a matter normally within the realm of the judgment of counsel," and this judgment will not be second-guessed by hindsight. *Sherrill v. Wyrick,* 524 F.2d 186, 190 (8th Cir.1975), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1134, 47 L.Ed.2d 332

(1976) (citing *Poole v. United States,* 438 F.2d 325, 326 (8th Cir.1971)). We therefore conclude that Pappas' decision not to file an alibi notice was a reasoned choice of trial strategy, and cannot form the basis for Frank's ineffective assistance of counsel claim.

## III.

Frank also maintains ineffective assistance in her counsel's failure to voir dire jurors concerning their prejudicial exposure to news accounts regarding the search for two missing witnesses during the three week recess. The district court again found Pappas' decision in this matter to be one of reasonable trial strategy.

At the postconviction hearing, Pappas testified that he believed a voir dire would accomplish nothing at all, as he felt the jurors would indicate that they could render a fair verdict. Pappas believed this could have hurt Frank by removing a ground for direct appeal, and instead gambled that a reviewing court would infer prejudice from the publication of the news articles during the three-week recess. *See State v. Sefcheck,* 261 Iowa 1159, 1174, 157 N.W.2d 128, 137 (1968) (in some situations, the very publication of an article may justify an inference of prejudice). We are therefore satisfied that the district court did not err in holding that Pappas' failure to voir dire the jury was a reasonable decision within the range of normal competency, and does not amount to ineffective assistance of counsel.

## IV.

Frank further argues that news publicity during the three-week recess was prejudicial and adversely influenced the jury. The district court accepted the affidavit of a juror concerning his exposure to a newspaper article. The court observed, however, that the Iowa trial court had carefully considered the possible prejudicial effect of the publicity on the jury and had determined that the newspaper accounts did not disclose any material which the jurors had not heard in the prosecutor's opening state-

ment. As these factual findings were entitled to a presumption of correctness, *see Rushen,* 464 U.S. at 120, 104 S.Ct. at 456–57, the district court denied relief on this ground.

The news publicity during the court's recess primarily concerned the disappearance of two witnesses, Penny Frank and Andrew Rupar. These news accounts contained various statements referring to Penny Frank as a "key witness" having "key testimony" essential in implicating her sister. The news stories also reported that a nationwide search for the witnesses was under way, that the witnesses were in contempt of court, and that their sworn statements would not be admissible in court. Eventually, the articles revealed that the witnesses had been found. Frank contends that the articles were prejudicial because they suggested that she caused the disappearance of the two witnesses and that one of these witnesses was "key" to the prosecution's case.

■ We believe that Frank has not demonstrated that she was prejudiced by the publication of these news accounts. First, the jury was admonished not to expose themselves to media publicity concerning their trial. A presumption arises that they will not violate this admonition, and a heavy burden is placed on Frank to prove that the jury was actually prejudiced by the news accounts. *Rizzo v. United States,* 304 F.2d 810, 815 (8th Cir.), *cert. denied,* 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962). To prove prejudice, Frank offered a juror's affidavit which indicated that he had read a news article concerning the missing witnesses and believed that Frank was somehow involved in their disappearance. The district court properly determined that although it could consider the juror's affidavit to the extent that he was exposed to the newspaper article, it could not consider the alleged effect the article had on him. While a juror may testify concerning the existence of extraneous influence, he may not testify concerning the jury's deliberations or the juror's mental processes. *See Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 2745–51, 97 L.Ed.2d 90 (1987).

Furthermore, although Frank has established that a juror read some of the news accounts, "it is not required that jurors be totally ignorant of the facts and issues involved." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1963). Mere exposure to publicity about a trial or information about a defendant is not grounds for a new trial. *See Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). In finding that Frank was not actually prejudiced by the news articles, the Iowa trial court noted that information contained in these news accounts, such as the reports concerning Penny Frank's "key testimony" implicating her sister, was already disclosed to the jury by the prosecution in his opening statement. The district court concluded that the news articles were not inflammatory, and did not directly indicate that Frank had forced the witnesses' disappearance, and that the result reached by the Iowa court was fairly supported by the record. We are satisfied that the district court properly denied habeas corpus relief on this ground.

## V.

Finally, Frank argues that she was denied her constitutional right to a fair trial based on newly discovered evidence that a witness, Penny Frank, had been suffering from schizophrenia when she testified at trial. Frank asserts that Penny's mental illness seriously affected her credibility, and that she could not effectively cross-examine Penny, thereby violating her Sixth Amendment right of confrontation.

The Iowa Court of Appeals held that Frank had not proven that Penny's mental illness impaired her testimonial capacity. The court concluded that Penny's mental illness would go to the jury's assessment of her credibility, and that Penny's testimony was impeached during the trial. In denying Frank's petition for habeas corpus relief, the district court agreed that evidence of Penny's mental illness is relevant only to impeach her testimony.

To justify habeas corpus relief, newly discovered evidence "must bear upon the constitutionality of the applicant's detention. The existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief." *Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963). Motions for a new trial based on such evidence are not favored, and a trial court's decision to deny new trials on this ground are given great weight. *United States v. Estabrook,* 774 F.2d 284, 290 (8th Cir.1985). "Moreover newly discovered evidence which is merely impeaching normally cannot form the basis for a new trial." *United States v. Bonadonna,* 775 F.2d 949, 957 (8th Cir. 1985). Unless the newly discovered evidence is so probative that it would produce an acquittal on retrial, a new trial on that ground must be denied. *Mastrian v. McManus,* 554 F.2d 813, 823 (8th Cir.), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977).

■ We are convinced that the evidence as to Penny Frank's mental illness is cumulative and relevant only to impeach her testimony. The jury had the opportunity to hear Penny's entire testimony. Penny first testified as a state's witness that Sandra Frank killed O'Harrow, but abruptly changed her testimony the following day, stating that she had lied and that Sandra had not killed O'Harrow. Penny stated during her testimony that she was having trouble remembering on the stand because people were staring at her, and many of her answers were unclear, or only nods of the head. Further, other witnesses testified at trial that Penny had neglected and abused her children, and that she had left town to avoid testifying. This testimony and Penny's demeanor at trial could cause the jury to question her mental stability and fitness. The evidence of Penny's mental illness, therefore, is cumulative and

goes to the jury's assessment of her credibility.

Moreover, the psychiatrist testified at the postconviction hearing that he had no concrete evidence that Penny was suffering from a mental illness during the trial, as he began treating her in 1982 and was not her examining psychiatrist directly after the trial. Rather, his opinion was based upon the medical records of doctors who examined Penny soon after the trial and his own evaluation of her five years later. Further, the Iowa Court of Appeals based its decision on the psychiatrist's testimony that Penny's mental problems did not affect her ability to perceive events, to understand questions asked her, or to know her obligation to tell the truth, and concluded that Penny's mental illness did not impair her testimonial capacity. As there is no evidence that these findings were clearly erroneous, *see Rushen,* 464 U.S. at 120, 104 S.Ct. at 456–57, we conclude that Frank has not established that Penny's mental illness impaired her testimonial capacity at the trial or that the new evidence would likely have produced an acquittal.

■ Frank also alleges that she was denied her right to confrontation under the Sixth Amendment,[2] which provides the accused the right "to be confronted with the witnesses against him." This has been interpreted as securing an adequate opportunity to cross-examine adverse witnesses. *In United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 841–42, 98 L.Ed.2d 951 (1988), the Supreme Court refused to find a violation of the Confrontation Clause where a victim whose memory was severely impaired could not explain the basis for an earlier identification of the defendant. The court reasoned that the Confrontation Clause mandates an opportunity for cross-examination, but does not require that it be

2. This Confrontation Clause claim was not presented in the state court hearings or to the district court for habeas relief. We may hear issues raised for the first time on appeal, *see Singleton v. Wulff,* 428 U.S. 106, 120–121, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976), when the result would not be "inconsistent with substantial justice," *Stafford v. Ford Motor Co.,*

790 F.2d 702, 706 (8th Cir.1986). Because Frank did make some mention of a Confrontation Clause violation in a reply brief before the district court, and because this claim closely resembles her arguments for a new trial based upon newly discovered evidence, we consider this claim.

successful or effective. *Id.* 484 U.S. at ——–——, 108 S.Ct. at 841–42, 98 L.Ed.2d at 957. "The literal right to 'confront' the witness at the time of trial forms the core of the values furthered by the Confrontation Clause." *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970). "As long as the declarant is testifying as a witness and subject to full and effective cross-examination, the Confrontation Clause is not violated." *Id.* Because Frank had the opportunity to question Penny, including inquiries into her mental state, she was given the right to "confront" her. Although Penny may have been suffering from schizophrenia at the time of her testimony, "[t]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *Delaware v. Fensterer,* 474 U.S. 15, 21–22, 106 S.Ct. 292, 296, 88 L.Ed.2d 15 (1985) (per curiam). Frank has not demonstrated any violation of the Confrontation Clause.

Accordingly, we affirm the district court's denial of Frank's habeas corpus petition.

